_____
                                          )
**SHRI GAYATRI, LLC,**                    )
**Plaintiff,**                            )
                                          )        **CIVIL ACTION**
                                          )        **NO. 15--40104-TSH**
**v.**                                    )
                                          )
**DAYS INNS WORLDWIDE, INC.**             )
**Defendant.**                            )
_____ )
                                          )

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### March 28, 2018

**HILLMAN, D.J.**

Plaintiff Shri Gayatri, LLC ("Shri Gayatri") brought the present suit after defendant Days

Inns Worldwide, Inc. ("DIW") terminated the parties' License Agreement for the operation of a

Days Inn lodging facility in Sturbridge, MA, after the facility was severely damaged by a

tornado. Shri Gayatri asserts that the DIW's termination of the License Agreement was a breach

of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II);

and that DIW's conduct violated Mass. Gen. L. ch. 93A (Count III).

### Background

Plaintiff Shri Gayatri is a Massachusetts LLC with three members: Jayesh Patel, Dina

Patel, and Kamlesh Patel. Shri Gayatri operated a guest lodging facility at 66-68 Haynes Road,

Sturbridge, MA (the "Facility"). Jayesh Patel, either alone or together with other business

partners, also owns or has owns several other franchised hotels, including a Motel 6 in

Sturbridge, Mass., a Motel 6 in Westborough, Mass., and a Hampton Inn in Auburn, Mass.

Defendant DIW operates a guest lodging facility franchise system, comprised of, *inter alia*, federally-registered trademarks and the DIW central reservations system. Shri Gayatri was a franchisee of DIW, and the relationship was created and governed by the License Agreement executed by both parties' on December 8, 1997. The License Agreement is specific to the Facility's location on Haynes Road. Under the License Agreement, Shri Gayatri would operate its lodging facility as a Days Inns franchise for a term of fifteen years, beginning January 4, 1999, and ending on January 3, 2014. Section 5 of the License Agreement states, in all capital letters, that neither party has a right or option to renew the Agreement.

Section 3.4 of the License Agreement required Shri Gayatri to "operate and maintain the Facility continuously after the Opening Date on a year-round basis as required by System Standards and offer transient guest lodging and other related services of the Facility…to the public in compliance with the law and System Standards." Section 3.4 also provided that Shri Gayatri "may add to or discontinue the amenities, services and facilities described in Schedule B…only with [DIW's] prior written consent which [DIW] will not unreasonably withhold or delay." However, Section 11.2 gives DIW the right to unilaterally terminate the License or the Agreement if Shri Gayatri were to "you discontinue operating the Facility as a 'Days Inn,'" or if DIW is "authorized to terminate under Section 3.1."

Section 11.3.1 of the License Agreement lays out terms covering the event of a casualty (such as a tornado) that prevents Shri Gayatri from operating their facility in the normal course of business. In the event of such a casualty, the Agreement provides:

> You will tell us in writing within 60 days after the Casualty whether or not you will restore, rebuild and refurbish the Facility to conform to System Standards and its condition prior to the Casualty. **This restoration will be completed within 180 days after the Casualty.** You may decide within the 60 days after the Casualty, and if we do not hear from you, we will assume that you have decided, to terminate this Agreement, effective as of the date of your notice or 60 days after the Casualty,

whichever comes first.  If this Agreement so terminates, you will pay all amounts accrued prior to termination and follow the post termination requirements in Section 13.  You will not be obligated to pay Liquidated Damages if the Facility will no longer be used as an extended stay or transient lodging facility after the Casualty.

Section 11.3.1 (emphasis added).

The Agreement does not contain terms regarding the availability of an extension to the 180-day period set for restoration after a casualty, nor does the Agreement specifically state that failure to complete restoration in the 180-day limit gives DIW the unilateral right to terminate the License Agreement.

On June 1, 2011, the Facility sustained severe damage after it was hit by a tornado, to the extent that it was required to completely shut down operations.  Shri Gayatri promptly notified DIW of the casualty, and the closure.  On June 6, 2011, DIW sent a letter ("Temporary Closing Letter") acknowledging that the Facility would be temporarily closed from June 3, 2011 through December 3, 2011.  The Temporary Closing Letter also stated "[i]f you are unable to open the Facility by December 3, 2011, it is imperative that you contact us prior to December 3, 2011, to advise us of when the Facility will reopen."  Jayesh Patel signed the letter, acknowledging that he agreed to its terms, and returned it to DIW.

Jayesh Patel claims that the Facility suffered additional damage from Hurricane Irene on August 28, 2011, and following a snowstorm on October 29, 2011.  Apart from Patel's deposition testimony, there is no evidence in the record that the Facility suffered any damage after the tornado, nor any evidence that DIW was ever notified of these additional alleged casualty losses.

During the 180-day period of temporary closing, Shri Gayatri made minor repairs, such as removing fallen trees and placing a tarp over the roof, but it did not rebuild or reopen the

Facility, nor did it apply for the necessary permits to do any work to the Facility during that time. Shri Gayatri was engaged in a dispute with its insurer during the 180-day period regarding coverage for the loss. A representative of DIW, Mr. Dudhwala, said that DIW would work with Shri Gayatri to reopen, and also informed Jayesh Patel that "[w]e will work on the extension of closing." CSMF ¶ 29. Just before the December 3, 2011 deadline for reopening, Shri Gayatri requested an extension of time to reopen, which DIW denied. On December 9, 2011, DIW sent a letter to Shri Gayatri acknowledging termination of the License Agreement as a result of Shri Gayatri's failure to reopen the Facility by December 3, 2011.

The day after the tornado, Jayesh Patel advised his bank that he would be using the insurance money received from the tornado damage to pay off a loan on a separate property in Sturbridge. On August 1, 2011, while in the process of seeking to finance or refinance other properties, Jayesh Patel advised his bank that Shri Gayatri had no intention of rebuilding the Facility at Haynes Road, a fact that he confirmed in his deposition testimony. Shri Gayatri planned to use the proceeds to build a new hotel at a different location in Sturbridge, when market conditions were favorable. Several years after the tornado, the Facility was demolished by Shri Gayatri, and no new guest lodging facility was built on the site.

In December 2013, Shri Gayatri filed suit against Charter Oak Fire Insurance Company in this Court alleging that the insurer's inaction during the 180-day period prevented Shri Gayatri from rebuilding and reopening its Facility within the 180-day period, leading to the termination of its License Agreement with DIW. This Court ruled in favor of the insurer on a motion for summary judgment, noting that Shri Gayatri had waited several months before cashing $360,000 in checks that it had received in August 2011.

## Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute precludes summary judgment if it is both "genuine" and "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). For a fact to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (citation omitted). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id.*

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing v. Outback Steakhouse of Florida*, LLC, 575 F.3d 145, 153 (1st Cir. 2009). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact within the record. *Id.* at 152. "The test is whether, as to each essential element, there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* (quoting *DeNovellis*, 124 F.3d at 306) (citation omitted). A trial judge acts well within his authority on a summary judgment motion in assessing the reasonableness of the inferences that might be drawn from the circumstantial evidence. *Ricci v. Alternative Energy, Inc.*, 211 F.3d 157 (1st Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**Discussion**

*Choice of Law*

The parties dispute whether New Jersey or Massachusetts law governs this dispute. "It is, of course, a black-letter rule that state substantive law must be applied by a federal court sitting in diversity jurisdiction." *Crellin Techs., Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 4 (1st Cir. 1994) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)). "In determining what state law pertains, the court must employ the choice-of-law framework of the forum state." *Id.*

Massachusetts courts "routinely enforce choice-of-law provisions unless the law chosen violates established public policy or bears no reasonable relationship to the contractual transaction between the parties." *Lambert v. Kysar*, 983 F.2d 1110, 1118 (1st Cir. 1993) (citing Mass.Gen.L. 106, § 1–105(1); *Morris v. Watsco, Inc.*, 385 Mass. 672, 674–75, 433 N.E.2d 886, 887 (1982); *Comdisco Disaster Recovery Servs. v. Money Management Systems, Inc.*, 789 F.Supp. 48, 52 (D.Mass.1992)).

Section 17.5 of the parties' License Agreement includes a choice-of-law provision, which provides

> This Agreement will be governed by and construed under the laws of the State of New Jersey. The New Jersey Franchise Practices Act will not apply to any Facility located outside the State of New Jersey.

Section 17.5. Shri Gayatri argues that this choice of law provision should not be enforced, and that Massachusetts law should apply, because Jayesh Patel was pressured into signing the License Agreement after two DIW representatives showed up at his workplace and urged him to

sign the same day. He claims that, as the result of this "urging," he was unable to negotiate the choice-of-law provision, though he was able to negotiate other terms of the License Agreement. He asserts that Massachusetts law should therefore apply to the present dispute because DIW's actions violated Massachusetts' "fundamental policy of protecting business people from the types of dishonest behaviors that Days Inns has engaged in." Opp. at 10.

Shri Gayatri's argument fails because it has misapplied and/or misunderstood the standard. It is when the law chosen violates established public policy that the Court would apply the law of the forum state. Shri Gayatri provides no argument that New Jersey law governing contracts in any way violates Massachusetts public policy. Accordingly, this court will apply the substantive law of New Jersey to the present dispute, in keeping with the choice of law provision in the License Agreement.

*Count I – Breach of Contract*

To succeed on a breach of contract claim under New Jersey law, Shri Gayatri must show "first, that '[t]he parties entered into a contract containing certain terms'; second, that 'plaintiff[s] did what the contract required [them] to do'; third, that 'defendant[s] did not do what the contract required [them] to do[,]' defined as a 'breach of the contract'; and fourth, that 'defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff[s].'" *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482, 139 A.3d 57, 64 (2016) (quoting *Model Jury Charge (Civil)*, § 4.10A "The Contract Claim–Generally" (May 1998); *Coyle v. Englander's*, 199 N.J.Super. 212, 223, 488 A.2d 1083 (App.Div.1985)). In addition, the contract documents **"**must be read as a whole, without artificial emphasis on one section, with a consequent disregard for thers." *RNC Sys., Inc. v. Modern Tech. Group, Inc.,* 861 F. Supp. 2d 436, 445 (D. N.J. 2012), *citing*

*Borough of Princeton v. Board of Chosen Freeholders of County of Mercer,* 333 N.J.Super. 310, 325, 755 A.2d 637 (N.J.Super.App.Div.2000). Moreover, the "court should examine the document as a whole and the court should not torture the language of a contract to create ambiguity." *Id*., citing *Societe Generale v. New Jersey Turnpike Authority,* No. 03–2071, 2005 WL 1630838, *5 (D. N.J. July 11, 2005) (and cases cited)

Shri Gayatri claims that, by failing to grant an extension of the 180-day period to reopen the Facility, DIW breached Section 3.4 of the License Agreement, which provides that Shri Gayatri "may add to or discontinue the amenities, services and facilities described in Schedule B, or lease or subcontract any service or portion of the Facility, only with [DIW's] prior written consent which [DIW] will not unreasonably withhold or delay." DIW argues that this provision does not apply to casualty-loss situations, and even if it did, DIW did not "unreasonably withhold or delay" its written consent to an extension because Shri Gayatri had taken no steps to rebuild or reopen the facility six months after the tornado struck.

Section 11.3.1 of the License Agreement unambiguously required Shri Gayatri to rebuild and reopen its Facility within 180 days of the tornado. By not rebuilding within 180-days, Shri Gayatri did not do what the contract required it to do, and thus fails to meet a necessary element of its claim. In addition, Shri Gayatri's reading of Section 11.3.1 separately from Section 3.4 of the License Agreement produces an absurd result, whereby DIW basically has no recourse in the event Shri Gayatri refuses to rebuild and reopen after a casualty, even though it is no longer operating as a Days Inn. While it is true that a DIW representative suggested to Jayesh Patel that an extension to the 180-day period would be possible, there was nothing in the License

Agreement that entitled Shri Gayatri to such an extension, and DIW's refusal to grant one does not amount to breach.

Moreover, even if Shri Gayatri's reading of Section 3.4 did require DIW to not "unreasonably withhold or delay" a requested extension to the 180-day period, DIW's refusal to grant an extension does not seem unreasonable, as Shri Gayatri had not undertaken *any* steps to rebuild or reopen the Facility within the 180-day period. Shri Gayatri admits that it took no steps to rebuild the Facility, never provided DIW with written notice of its intent to rebuild the Facility, and never provided DIW with any documents evincing any intent to rebuild the Facility. Shri Gayatri also admits that the earliest possible date the Facility could have been reopened was March 2013, more than 630 days after the tornado struck the Facility and more than 450 days beyond the rebuilding time permitted by the License Agreement.

Shri Gayatri also asserts that Sections 11.1 and 11.2 set the procedure for DIW to terminate the License Agreement in the event that Shri Gayatri defaulted, and that DIW did not follow those procedures, because it did not give the required 30-day notice to cure. Shri Gayatri argues that Days Inns breached the License Agreement by failing to follow the default and termination provisions laid out in the License Agreement. Shri Gayatri also argues that Days Inn further acted with a lack of good faith by misrepresenting to Shri Gayatri its plans to terminate the License Agreement.

Section 11.2 clearly states that termination is effective when DIW sends notice in the event Shri Gayatri discontinues operating the Facility as a "Days Inn," so DIW was not required to provide notice of default or allow opportunity to cure under that circumstance. When contractual language is clear and unambiguous, it falls to the Court to employ common sense to analyze its meaning. "The polestar of contract construction is to discover the intention of the

parties as revealed by the language used by them." *Karl's Sales & Serv. v. Gimbel Bros.,* 249

N.J.Super. 487, 592 A.2d 647, 650 (N.J.Super.A.D.1991); *see also Sandonato v. Days Inn*

*Worldwide, Inc.,* CA 07-451S, 2010 WL 8461122, at *9 (D. R.I. July 21, 2010), *report and*

*recommendation adopted*, CA 07-451 S, 2012 WL 718720 (D. R.I. Mar. 5, 2012). None of the

Shri Gayatri's activity following the tornado and other natural disaster appears to lead to a new

hotel at the original 66-68 Haynes Road location. It became clear that Shri Gayatri's interest in

the insurance proceeds were not to rebuild the Days Inn at 66-68 Haynes Road, but more likely

to rebuild another hotel in another location.

On these facts, and taken in a light most favorable to Shri Gatri, I find that there was no

breach of the License Agreement. Accordingly, the motion for summary judgment as to Count I

is granted.

*Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing*

Under the laws of New Jersey, all contracts contain an implied covenant of good faith

and fair dealing. *See Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420, 690 A.2d 575, 587

(1997). "Proof of bad motive or intention is vital to an action for breach of the covenant."

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 225, 864

A.2d 387, 396 (2005) (internal citations and quotations omitted). The party claiming a breach of

the covenant of good faith and fair dealing must provide evidence sufficient to support a

conclusion that the party alleged to have acted in bad faith has engaged in some conduct that

denied the benefit of the bargain originally intended by the parties." *Id.* (internal citations and

quotations omitted). If a party has an express right to terminate, the motivation of that party in

terminating the contract is irrelevant. *See Sons of Thunder*, 148 N.J. at 423. [A] party to a

contract may breach the implied covenant of good faith and fair dealing in performing its

obligations even when it exercises an express and unconditional right to terminate." *Id.at* 422.

Such a breach may occur even if there has been no breach of any of the express terms of the

contract. *See Shree Ganesh, Inc. v. Days Inns Worldwide, Inc.,* 192 F. Supp. 2d 774, 784 (N.D.

Ohio 2002). However, the law is also clear that where the right to terminate a contract is absolute

under the wording in an agreement, the motive of a party in terminating such an agreement is

irrelevant to the question of whether the termination is effective. *Karl's Sales and Serv., Inc. v.*

*Gimbel Bros., Inc.,* 592 A.2d 647, 651 (N.J. Super. App. Div. 1991) (and cases cited). Assuming

that DIW had the right to terminate the License Agreement as discussed above, then the only

conduct subject to review is DIW's conduct prior to termination.

New Jersey courts have held that a party who encourages another party to incur

additional expenses performing its contract obligations when that party knows that it is going to

exercise its right to terminate, has breached the implied covenant. *See Bak-a-Lum Corp. of Am.*

*v. Alcoa Bldg. Prods., Inc.*, 69 N.J. 123, 127 (1976). Here, while DIW representative Mr.

Dudhwala suggested to Mr. Patel that an extension to the 180-period would be attainable, Shri

Gayatri has put for no evidence that Patel was encouraged to spend additional funds, or did

expend additional funds, repairing or rebuilding the Facility. In fact, the record shows that Shri

Gayatri knew as early as August, 2011 that it would not repair the Facility, and had taken no

steps toward obtaining permits for rebuilding.

Shri Gayatri contends that they were purposefully misled to believe that Shri Gayatri

could extend its time to repair or rebuild the Facility. It specifically asserts that this involved

representations made by Dudhwala telling Jayesh Patel, "We'll work with you, keep me

informed," and a phrase in the Temporary Closing Letter, which stated "We understand that the

facility is to reopen on December 3, 2011. If you are unable to open the Facility by December 3,

2011, it is imperative that you contact us prior to December 3, 2011 to advise us of when the Facility will reopen." Therefore, Shri Gayatri has not alleged facts that "show that the contract vested the opposing party with discretion in performing an obligation under the contract and [that] the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties." *LaSalle Bank Nat'l Assoc.*, 588 F. Supp. 2d at 857. *Breland v. McDonald's Corp.*, 1:09-CV-0523-BBM, 2009 WL 10666356, at *10 (N.D. Ga. Dec. 31, 2009). The Court finds that Count II fails as a matter of law and must be dismissed.

### Count III – Violations of Mass. Gen. L. ch. 93A

DIW asserts that the choice of law provision in the License Agreement bars Shri Gayatri's Chapter 93A claim, and this Court agrees. As discussed above, New Jersey law applies to the parties' disputes, and a Chapter 93A claim is not cognizable under New Jersey law. "If a contract is governed by a particular state's law under a choice of law provision, then a party cannot bring a claim under another state's statute if that statutory claim is "essentially duplicative" of a contract claim." *NPS, LLC v. Ambac Assur. Corp.*, 706 F. Supp. 2d 162, 169 (D. Mass. 2010). "[T]he Massachusetts Supreme Judicial Court has recognized that, under some circumstances, a Chapter 93A claim 'is essentially duplicative of a traditional contract claim,'" and "has denied plaintiffs "double recovery" on both a breach of contract claim and a 93A claim arising from the same breach." *Ne. Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607, 610 (1st Cir. 1993) (quoting *Canal Electric Co. v. Westinghouse Electric Corp.*, 406 Mass. 369, 548 N.E.2d 182, 187 (1990); citing *Linthicum v. Archambault*, 379 Mass. 381, 398 N.E.2d 482 (1979)). In the present case, apart from adding that DIW's actions were "unfair and deceptive" and "willful and/or knowing," Shri Gayatri's Chapter 93A claim is just a

repackaged version of its breach of contract claim.  Accordingly, summary judgment in favor of DIW on Count III is appropriate.

## **Conclusion**

For the reasons set forth above, Defendant's Motion for Summary Judgment (Docket No. 46) will be ***granted***.


**SO ORDERED**.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE
